**Luther Gerald PARKS, Jr., Plaintiff,**

**v.**

**Joe GOFF, Individually and as Chief of Police of the City of Forrest City, et al., Defendants.**

**No. H–C–77–37.**

United States District Court,
E. D. Arkansas, E. D.

Jan. 8, 1980.

503

Robert M. Cearley, Jr., Cearley, Gitchel, Bogard & Mitchell, Richard W. Roachell, Little Rock, Ark., for plaintiff.

Knox Kinney, City Atty., Forrest City, Ark., for defendants.

## MEMORANDUM OPINION

OREN HARRIS, Senior District Judge.

In this proceeding plaintiff, a former police officer of the City of Forrest City, Arkansas, seeks reinstatement in his former position, with raises, seniority and promotions, and an award of backpay, contending that his rights to due process were violated when he was fired by the Chief of Police and his firing upheld by the City Council. He also seeks recovery for alleged damages to his reputation and for alleged malicious interference with his application for a permit from the State Alcoholic Beverage Commission. Jurisdiction is alleged pursuant to 28 U.S.C. §§ 1343, 2201 for vindication of a cause of action provided for under 42 U.S.C. §§ 1981, 1983 and the Fifth and Fourteenth Amendments to the Constitution of the United States.

Defendants deny that the rights of plaintiff under the Constitution and laws of the United States were violated by the manner and means of termination of plaintiff's employment, relying upon a post-termination hearing procedure set up under a City ordinance. Defendants further deny any malicious interference with the application of plaintiff for a permit from the Alcoholic Beverage Commission.

Pursuant to regular setting, the matter was tried to the Court, without the intervention of a jury, with the consent of all parties and waiver of right to trial by jury. The Court heard and received evidence from plaintiff, present in person and represented by Hon. Robert Cearley and Hon. Richard Roachell, and from defendants, represented by Hon. Knox Kinney. The parties rested and the matter was taken under

advisement pending receipt of briefs of counsel. All briefs have now been received and the matter submitted for determination.

The Court, in consideration of the pleadings, testimony, exhibits, and the entire record, and after careful review of the briefs and authorities presented by counsel, makes the following findings of fact and conclusions of law, which are incorporated herein pursuant to Rule 52, Federal Rules of Civil Procedure:

Plaintiff is a resident citizen of the United States and of the State of Arkansas. Defendants are alleged to have acted as to the allegations of the complaint in their official capacities as Chief of Police, Mayor, and Aldermen of the City of Forrest City, Arkansas, a municipal corporation established under the laws of the State of Arkansas. The Court finds that a cause of action has been stated pursuant to 42 U.S.C. § 1983 and that jurisdiction exists pursuant to 28 U.S.C. § 1343. The complaint states a cause of deprivation of rights protected by the Constitution and Laws of the United States to plaintiff and that such deprivation was accomplished by defendants under color of their duties pursuant to laws of the State of Arkansas.

The basic evidentiary facts are virtually without dispute. Plaintiff, Luther Gerald Parks, Jr., was employed by the City of Forrest City, Arkansas, as a police officer on October 3, 1969. He had been promoted to the rank of Lieutenant by the time of the events complained of herein.

At the time of his appointment, and in fact from the 4th of October, 1949, members of the Forrest City police department were protected in their employment by Ordinance No. 634, adopted on that date pursuant to Ark.Stats.Ann. 19–1601, et seq., which established a Civil Service Commission. One of the provisions of the civil service laws was to provide that police officers were not subject to dismissal except for cause, and to establish a right to pre-discharge hearing and to judicial review of decisions adverse to an officer. Rights of officers under civil service will be reviewed in more detail below.

On January 7, 1975, the City Council adopted Ordinance No. 1340, the effect of which was to abolish the Civil Service Commission of Forrest City, to give the Chief of Police the sole right to hire and fire members of the police department, and to remove direct judicial review of adverse actions by police officers affected. The Ordinance, in its pertinent part, provides:

"Section 4. That the Chief of Police . . . shall . . . have the sole right to hire and fire all personnel within . . . such department; and any person aggrieved as the result thereof shall have the right to request, within thirty days of such action, a hearing before the City Council by filing request for hearing with the City Clerk; whereupon the City Council shall forthwith set a hearing upon said matter at subsequent meeting of the Council expeditiously provided, and shall take such action thereupon as shall fully comply with the requirements of justice and due process of law."

It is noted that the Ordinance does not provide for a pre-termination hearing, and that it is not clear what the City Council might provide by way of relief after such hearing, the "sole right to hire and fire" having been delegated to the Chief of Police. The Ordinance does not provide for any right of review of any action taken by the Council in court, as did the Civil Service statutes and ordinance. The Ordinance does not set up any procedures, or provide for compulsory attendance of witnesses, as did the Civil Service statutes and ordinance.

Plaintiff had served for some 6 years as a police officer on the Forrest City Police Department, had advanced to the rank of lieutenant, and the Court concludes that he did have a reasonable expectation of continued employment with the department, even in the absence of civil service protection. The civil service Rules and Regulations, 1970 edition, were furnished to plaintiff and the other officers, and had not been replaced. Further, the grounds specified in the letter of dismissal of January 16, 1975, setting forth the reasons for which plaintiff

was dismissed, effective that date, from the department, are clearly for violation of the civil service Rules and Regulations which existed at the time of the alleged violations. The Court, therefore, finds and concludes that the plaintiff had a property interest in his employment with the Forrest City Police Department which could not be divested without due process of law.

It has been well established since *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), that notice and an opportunity to be heard *before* termination are required where a property right is found to exist in continued employment. It is undisputed that plaintiff was fired on January 16, 1975, and that no hearing was afforded until February 11, 1975. The rights of plaintiff to a pre-termination hearing were clearly violated.

A careful review of the grounds for dismissal set forth in the January 16, 1975 letter from Chief of Police Goff to plaintiff, reveals that the grounds stated are not sufficient to operate as effective notice of particular charges of misconduct within the bounds of due process. The charges do not specify the dates, places and conduct alleged to constitute a violation of the rules, merely conclusions that these rules have been violated.

Plaintiff requested a hearing before the City Council, as was provided for in the Ordinance. Plaintiff was present at the hearing and represented by counsel, Hon. John Bilheimer. Mr. Bilheimer objected to the charges as conclusory, but denied them on behalf of plaintiff. According to the transcript of the hearing, plaintiff admitted that he had taken a drink of liquor, but not on duty. He admitted the charge, but only on the basis that an officer is always on call 24 hours a day, and it was not charged that he was drunk· or under the influence of alcohol, as set out in Rule 10, Civil Service Rules and Regulations.

Plaintiff denied having failed to pay bills, as provided for in Rule 7 and 8. Plaintiff admitted that he had on occasion attended night clubs, but denied "frequenting" them. No rule or regulation prohibited such actions.

Plaintiff denied having assaulted a female, resulting in filing of misdemeanor charges as a matter of record. He did admit an altercation with his former wife which resulted in her swearing out a warrant, which was later withdrawn at her request.

The City Attorney, Hon. Knox Kinney, acting as hearing officer for the Council, elaborated on the charge of conduct not becoming to an officer by commenting that it included all of the foregoing, and in addition, such matters as engaging in excessive police brutality, cursing and epithets directed to persons being arrested, affrays with the person being arrested, and "things of that sort". Plaintiff denied these charges, but when asked to do so Mr. Kinney refused to be more specific.

The sixth charge, failure to meet leadership responsibilities inherent in his position, was denied. Mr. Kinney stated that the only question was whether the council wants to have this man employed in the police department. He stated that, "[W]e aren't prepared to have a trial tonight, that's not what it's here for. It is an administrative hearing." No persons were brought forward or even named who purported to provide any evidence whatever as to any of the alleged violations of rules by plaintiff.

Plaintiff was thus denied the opportunity of confronting his accusers, or of even knowing who they were or what particular conduct was complained of. It developed at the trial of this cause in this Court that one of the principal accusers was the Mayor, Mr. Conlee, a defendant herein. He testified about receiving complaints about plaintiff, about following and observing plaintiff in what would clearly be instances which would warrant disciplinary action or dismissal, such as drinking in his police car while on duty and having sex with one or more women while on duty.

In addition to the personal observations of the Mayor, the police committee of the City Council had secretly conducted an in-

vestigation which resulted in their reporting of numerous violations on the part of plaintiff to the council. The chairman of the police committee was not present, but it was stated by one of the members, not identified, that the committee had gathered evidence, heard witnesses, and that the only purpose of the hearing was to allow plaintiff to have his say before the council.

■ The Court finds that the hearing before the City Council did not afford plaintiff even the barest essentials of due process of law. He was not given prior notice of charges, and even at the hearing was refused any statement of particular incidents. No persons were brought forward to substantiate any of the reasons advanced for termination and he was thus denied an opportunity to confront his accusers or to cross examine them. Without even being told of any specific allegations of misconduct, he could not be said to have had a fair opportunity to present evidence in refutation or mitigation.

Although the mayor and certain of the members of the Council purported to have investigated plaintiff's conduct, plaintiff was not informed of any evidence, any person who had given a statement against him, any specific instance of misconduct, or given any additional information of charges or evidence, even upon inquiry of counsel at the "hearing." No persons appeared to testify and no evidence was presented in support of the allegations of the discharge letter. It is clearly evident that the mayor and council had conducted a secret, ex parte investigation and had made up their minds that the discharge of plaintiff was to be affirmed prior to the "hearing." The hearing was mere window dressing, only lip service given to due process.

Due process is flexible and calls for such procedural protections as the particular situation demands. *Morrisey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), minimal due process procedures for termination of employment of governmental employees was held to include notice of and a copy of the charge, reasonable time for filing a response, an opportunity for an oral appearance, and an evidentiary hearing.

In *Brouillette v. Board of Directors*, 519 F.2d 126 (8th Cir. 1975), *minimal requirements* of a fair dismissal hearing were stated to include: (1) clear and actual notice of the reasons for termination in sufficient detail to enable the person charged to present evidence relating to them; (2) notice of both the names of those who have made allegations against the accused and the specific nature and factual basis for the charges; (3) a reasonable time and opportunity to present testimony in his or her own defense; and (4) a hearing before an impartial board or tribunal. Both the notice afforded and the opportunity to be heard must be appropriate to the nature of the charges made. *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

*Skehan v. Board of Trustees of Bloomsburg State College*, 501 F.2d 31 (3 Cir. 1974) and *Anapol v. Univ. of Delaware*, 412 F.Supp. 675 (D.Del.1975), require as elements of due process clear notice of the charges, a reasonable time to assemble facts and evidence, an explanation of the substance of the evidence supporting the charges, and an opportunity for the accused to present his side of the case in a manner which will permit the decision maker to weigh both sides. In *Anapol*, it was determined that the proper remedy for a deprivation of a termination hearing was reinstatement with back pay, but with termination possible after a proper and adequate hearing was afforded.

The teaching of *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) and the cases reviewed in *Craig v. Carson*, 449 F.Supp. 385 (M.D.Fla.1978) at pp. 390–391, is that a termination hearing must be both meaningful and reasonable in order to meet the requirements of due process. In *Keane v. Berry*, 416 F.Supp. 858 (D.Ariz. 1976), the Court cited *Arnett, Goss v. Lopez*, 419 U.S. 565 (1975), *Wheeler v. Montgomery*, 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970), and *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515

(1971), as establishing a right to present witnesses and to confront the accusers in hearings which may result in lengthy suspensions of benefits or dismissal from employment in which a property right is enjoyed. Ex parte questioning of witnesses by a hearing officer was expressly disapproved as violative of due process rights.

The notice to plaintiff of the charges resulting in his dismissal was clearly inadequate. He was not informed of any specific conduct or occasion of an alleged violation. He was not informed to the names of any person who supplied information of any alleged violation. He was not informed of the substance of any such information known to the defendants.

By reason of the vagueness of the charges and the lack of information as to the substance of the allegations against him, as well as the lack of opportunity to confront those who supplied the information, plaintiff was deprived of any meaningful opportunity to explain or rebut the allegations. It is apparent from the record before the Court that the Mayor and certain of the Council members had conducted a secret investigation, that they had no intention to impart the results of the investigation to plaintiff, and that their minds were made up well in advance of the hearing that the plaintiff should be fired. The investigation preceded the enactment of the Ordinance which abolished the Civil Service Commission, and it was intended to strip plaintiff of the procedural safeguards of civil service that the Ordinance was enacted.

The Mayor and Council had set out to "clean out" the police department, and perceived the civil service protection afforded the officers as an impediment. Merely removing this statutory protection did not, however, strip plaintiff of his reasonable expectation of continued employment in view of his years of service, his rank, and the specific job security which had been afforded by civil service employment heretofore. Further, the incidents and conduct which were brought out for the first time at the hearing in this Court all took place at a time when plaintiff was under civil service, and could not have been discharged without cause. The Ordinance did not specifically state that the Chief of Police could fire an officer "without cause", and the new chief, the Mayor and Council all have continued to treat the Ordinance as requiring a cause for dismissal, recognizing an expectation of continued employment.

The hearing agency, the City Council, was not neutral or unbiased. They had just abolished the Civil Service Commission so that they, rather than an unbiased tribunal, could deal with any appeals from dismissals. They had already completed to their satisfaction an investigation of plaintiff, had already made up their minds that plaintiff should be fired, and were merely going through the motions of "letting him have his say" before announcing the decision. It is readily concluded that the hearing afforded to plaintiff was a sham, which did not afford to plaintiff any semblance of the due process to which he was entitled before a final decision as to his dismissal.

The Court, therefore, finds and concludes that defendants did deprive plaintiff of his rights of property in employment with the police department, and his rights of liberty by reason of the nature of and publicity given to the allegations against him. The real difficulty in this case is not deciding whether a deprivation has occurred. That is evident. The problem is the remedy which should be afforded.

From the evidence presented in this Court, and which could have been presented at a dismissal hearing comporting with the requirements of due process, the Court finds that the plaintiff was in fact guilty of such gross misconduct in office that the Chief of Police, the Mayor, and the Council would have been derelict in their duties had they not fired him.

Plaintiff did, in fact, imbibe alcoholic beverages while on duty, in uniform, and in a police vehicle. He did engage in illicit sexual relations when on duty as a police officer. He did "frequent" night clubs while on duty and for purposes other than performance of his duties. He did commit

acts not becoming to a police officer and not a proper example to those under his command as a lieutenant in charge of a watch.

This Court finds and concludes that, had a full and proper due process dismissal hearing been afforded plaintiff, the only possible result would have been to confirm that he should be dismissed from the police force for violation of the written rules and regulations which were in force at the time the conduct complained of took place. The charges were both true and a sufficient basis for termination.

As noted heretofore, *Anapol. v. Univ. of Delaware*, supra, resulted in a reinstatement of the plaintiff professor there involved with back pay pending a due process hearing. In the light of the circumstances of this case, the Court finds that such a remedy is inappropriate, particularly where it might possibly place plaintiff in a position of public responsibility and trust where he clearly does not belong.

*Owen v. City of Independence*, Mo., 589 F.2d 335 (8 Cir. 1978) [prior proceedings 421 F.Supp. 1110, 560 F.2d 1925], provides some guidance. It was held that an award of backpay to be paid by a city was proper, even though the city was not then recognized as a "person" under § 1983 (560 F.2d at 930) "in proper cases". It was recognized (560 F.2d at 925) that under certain circumstances a full backpay remedy would afford a windfall at the expense of the taxpayers, and that a person deprived of constitutional rights is entitled to relief only to the extent of the harm sustained, citing *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977).

The Court finds that plaintiff is not entitled to any relief by way of backpay or reinstatement for the reason that the charges of misconduct were fully supported by the record adduced in this Court, and that any impartial tribunal would, after a proper evidentiary hearing, have affirmed the firing of the plaintiff. *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), and *Codd v. Velger*, supra, teach that the reme-

dy to be afforded in cases of deprivation of rights to a due process hearing may be considered in the light of the truth of the charges, and whether a sufficient basis for termination did in fact exist. *Owen v. City of Independence*, supra, recognizes that the finding of a deprivation of due process does not require that the plaintiff be placed in a better position than he would have enjoyed had due process been afforded in the first instance. Reinstatement and backpay are equitable remedies, and are not to be afforded when the result would clearly be inequitable.

The Court finds that plaintiff has not sustained any actual damages attributable to the lack of procedural due process, for the reason that a proper hearing would have resulted in the same disposition. Under such circumstances, reinstatement and backpay are not proper remedies, and an award of compensatory damages is not justified. *Austin v. Board of Education of Georgetown*, 562 F.2d 446 (7 Cir. 1977).

Of course, the deprivation of rights guaranteed by the Constitution and laws of the United States is wrongful in and of itself, even in the absence of proof of actual damages. The recent case of *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), was concerned with just such a situation. There was a finding of denial of procedural due process. The Court granted certiorari expressly to consider whether, in an action under section 1983 for the deprivation of procedural due process, plaintiff must prove that he actually sustained damages arising out of such deprivation before he may recover "non-punitive" damages.

The Court stated, without dissent:

". . . [I]f petitioners can prove on remand that '[respondents] would have been suspended even if a proper hearing had been held,' . . . then respondents will not be entitled to recover damages to compensate them for injuries caused by the suspensions. The court thought that in such a case, the failure to accord procedural due process could not properly be viewed as the cause of the suspensions. [citing cases] The court

suggested that in such circumstances, an award of damages for injuries caused by the suspensions would constitute a windfall, rather than compensation, to respondents. [citing cases] We do not understand the parties to disagree with this conclusion. *Nor do we.*" 435 U.S. at 260, 98 S.Ct. at 1050–1051 (emphasis added).

\* \* \* \* \* \*

"Moreover, where a deprivation is justified but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure. But as the Court of Appeals held, the injury caused by a justified deprivation, including distress, is not properly compensable under § 1983 . . . ." 435 U.S. at 263, 98 S.Ct. at 1052.

\* \* \* \* \* \*

"Because the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural. due process be observed [citing cases], we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury. *We therefore hold that if, upon remand, the District Court determines that respondents' suspensions were justified, respondents nevertheless will be entitled to recover nominal damages not to exceed one dollar from petitioners."* 435 U.S. at 266–7, 98 S.Ct. at 1054 (emphasis added).

*Carey* is obviously controlling when applied to the facts of the instant case. Plaintiff has suffered a deprivation of procedural due process. The deprivation of his property and liberty rights in his former employment,. however, is found to be justified. Judgment will, therefore, be entered in favor of plaintiff in the amount of one dollar, representing nominal damages for such deprivation of procedure.

The Court further finds that defendants knew or should have known that their actions were in contravention of well settled, indisputable law, as heretofore delineated. There were numerous cases, clearly established judicial decisions, setting forth the. right of a public employee under circumstances similar to those in this case to procedural due process. Defendants not only had the benefit of advice of counsel, but were given a "short course" in the requirements by counsel for plaintiff at the hearing.

The Court, however, finds that defendants had no actual malice toward plaintiff. They sought, not to deprive him of his rights, but to remove from the police department of their city a person found by them to be completely unacceptable in such a position of responsibility as to have command of the entire force during a shift. This, to them, constituted a clear and present danger to the community for whose administration they were responsible. They acted out of concern, not malice. Their motivation was good, but their methods were clearly deficient.

These findings are necessary to a determination of the award of attorney fees and costs pursuant to the Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. An award of even nominal damages will support the award of attorney fees and costs to the prevailing party under this statute. *Perez v. University of Puerto Rico,* 600 F.2d 1 (1 Cir. 1979).

There is a split of authority as to whether such an award should be made against defendants in their "individual" capacity, as opposed to their "official" capacity. Awards made against officials in that capacity are treated as awards against the governmental entity, *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), and are not paid by the individual. Both views are set forth in *McNamara v. Moody,* 606 F.2d 621 (5 Cir. 1979).

This Court need not concern itself with the split of authority, however, as the Court of Appeals for the Eighth Circuit has spoken directly on the point in *Pickett v. Milam,* 579 F.2d 1118 (8 Cir. 1978). The Court there stated that a finding that the

defendants had not acted in bad faith, under the *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), standard of *subjective* bad faith would preclude an award of attorney fees against them in their individual capacity.

The judgment herein will, therefore, include an award against defendants, Mayor and members of the City Council of Forrest City, Arkansas, in their official capacities, for costs of this action and a reasonable attorney fee, which shall be treated as an award against the municipality pursuant to *Hutto v. Finney*, supra.

Counsel for plaintiff will submit a detailed statement and justification for fees claimed to this Court within 15 days from the date of this Opinion. Counsel for defendants will file a statement of any objections thereto within 10 days thereafter. Of course, should counsel stipulate as to a reasonable attorney fee, such statements need not be filed.

Finally, there is the claim of plaintiff that Mayor Conlee and Chief of Police Goff willfully and maliciously conspired to deprive him of a permit to sell alcoholic beverages by making a response to a questionaire submitted to them in the usual course of an investigation for such permit by the Alcoholic Beverage Control Board of the State of Arkansas.

It is well settled that a permit to sell alcoholic beverages in Arkansas is a privilege, not a right. *McCarroll v. Clyde Collins Liquors*, 198 Ark. 896, 132 S.W.2d 19, and is subject to the police power of the State, *Vel v. Adams*, 243 Ark. 895, 422 S.W.2d 691. The acts of the Mayor and Chief of Police in responding to the official questionaire were in the usual scope of their official duties, and privileged, *Adams v. Bryant*, 236 Ark. 859, 370 S.W.2d 432.

The Court further finds that the responses were made in good faith belief that they were true, and that plaintiff was not, in the opinion of the Mayor and the Chief of Police, of such character as they thought appropriate to the privilege and responsibility of being granted a license to dispense intoxicating beverages within the community. The Court, therefore, concludes that the plaintiff has not proven any right to recover on his allegations of civil conspiracy or deprivation of reasonable business expectancy.

Upon determination of the amount of attorney fees to be awarded, judgment will be entered in accordance with this Memorandum Opinion awarding plaintiff judgment in the sum of One Dollar nominal damages against defendants, costs and a reasonable attorney fee, and denying the further relief sought in his complaint.