190

John D. TONEY, Sr. *v.* John T. HASKINS et al

CA 80-222                                    608 S.W. 2d 28

Court of Appeals of Arkansas
Opinion delivered November 19, 1980
[Supplemental opinion on denial of rehearing
December 10, 1980.]

*Hoover, Jacobs & Storey*, for appellant.

*Cearley, Gitchell, Mitchell & Bryant*, for appellees.

DAVID NEWBERN, Judge. The procedural morass which gives rise to this appeal yields an issue which is easier to decide than the facts are to describe. Basically, the question presented is whether the appellant should have been allowed to present an equitable counterclaim which was closely related to the main action and which arose after the issues had been joined in the circuit court. We hold the counterclaim should have been allowed and the entire matter transferred to chancery, and thus the case is remanded for that purpose.

In May, 1977, the appellant Toney, a realtor, purchased

land from Weinstein, another realtor. In June, 1977, Toney and Haskins entered an agreement whereby Haskins was to purchase the same land from Toney. In July, 1977, Haskins gave Toney a note and mortgage. A first mortgage had been executed in favor of a bank. The mortgage to Haskins was a second mortgage for the purchase price in excess of that which the bank had agreed to lend.

In December, 1978, Haskins filed a complaint in the circuit court alleging that he and Toney had a fiduciary relationship and that Toney had obtained secret profits in purchasing the land from Weinstein and selling it to Haskins.

In his answer, Toney denied existence of any fiduciary relationship with Haskins and asserted a counterclaim basically sounding in abuse of process. In that pleading, Toney mentioned the note from Haskins to him and asked for attorney's fees incident to defending the note. Haskins had not at that time failed to make any of his note payments to Toney.

In that same answer, Toney asserted a third party claim against one Roger Mears. Because it is not material to the outcome here, we will refrain from discussing that third party action except to say that it resulted in the filing of pleadings and motions and was ultimately dismissed with prejudice on March 27, 1980.

On March 28, 1980, Toney sought to supplement his answer to the original complaint by Haskins. He asserted a new counterclaim for foreclosure on the note, alleging Haskins had defaulted by failing to make a payment due July 31, 1979. In addition, Toney asserted third party claims against the other named appellees as persons having possible interests in the property subject to the mortgage. Along with this pleading, Toney moved to transfer the entire case to the chancery court, saying foreclosure could only be considered there and the initial claim was in the nature of an accounting which is also equitable in nature.

On April 18, 1980, the court entered an order which: (1) struck the foreclosure counterclaim from Toney's revised

pleading on the bases that it was not "timely filed" and violated Toney's election of remedies to sue at law on the note; (2) dismissed the third party aspects of the pleading because Toney had not sought leave of the court to file against third parties and because the court lacked jurisdiction to entertain a foreclosure claim; and (3) denied the motion to transfer to chancery.

### 1. *Appealable order.*

Before discussing the main problem presented, we must deal with Haskins' assertion that the court's order is not appealable. We need only look to rule 2.(a)4., *A. R. App. P.*, to see that any order which strikes a portion of a pleading is appealable.

On this point Haskins cites *Davis* v. *General Motors Corp.*, 257 Ark. 983, 521 S.W. 2d 214 (1975), saying that, to be appealable, an order must affect a substantial right. While that case was decided long before the *A. R. App. P.* came into effect, it is consistent with rule 2.(a)2. which says an order is appealable if it effectively determines or discontinues the action. Here, the court, by striking the foreclosure claim against Haskins and dismissing it with respect to the third parties, refusing to transfer to equity and declaring its lack of jurisdiction in the matter has certainly effectively determined that claim. On oral argument Haskins asserted Toney had not been precluded from seeking a foreclosure in chancery, but Haskins cannot satisfactorily explain why Haskins would be precluded from asserting the election of remedies doctrine there if, as Haskins contends, it applies here.

Haskins also cites *McConnell and Son* v. *Sadle*, 248 Ark. 1182, 455 S.W. 2d 880 (1970), saying an appeal will not be permitted where taken piecemeal resulting only in delay. We can find nothing here to show this appeal is taken for purposes of delay. As the foreclosure claim has been effectively dismissed, we are in no position to agree that this appeal is "piecemeal" in the sense that term is used in the *McConnell* case.

## 2. *Timeliness of counterclaim.*

Haskins asserts the court was correct in striking the foreclosure claim because of Toney's delay in asserting it. This brings into focus the court's remark that the counterclaim was dismissed because it was not timely filed.

Apparently at the trial level, and certainly in their briefs and argument before this court, the parties disputed whether the court was correct in striking the counterclaim for foreclosure pursuant to the provisions of *A. R. Civ. P.* 15(a) which deals with amendments to pleadings.

Rule 15(a) is in no way applicable. Haskins argued that the filing of his suit for "secret profits" constituted an "anticipatory breach" of the note, thus giving rise to the foreclosure counterclaim at that point. No authority is cited for that novel argument, and thus we need not consider it. *Cherokee Carpet Mills, Inc.* v. *Worthen Bank and Trust Co.*, 262 Ark. 776, 561 S.W. 2d 310 (1978); *Shinn* v. *First National Bank of Hope, Arkansas*, 270 Ark. 774, 606 S.W. 2d 154 (Ark. App. 1980). We will, however, say that as a matter of common sense we fail to see how a request for cash damages for the face value of an unpaid note, but a note on which no payment was due, could be other than an affirmance of the obligation represented by the note itself. Even had Haskins sought rescission of the agreement and cancellation of the instrument, we would not necessarily translate that into a default occurring at the time the complaint was filed.

The default occurred when Haskins did not make the payment due July 31, 1979, long after the initial pleadings which were filed in 1978. Thus, the right to foreclosure alleged matured after Toney had answered the complaint. Rule 13 (d) provides that such a claim may be filed as a supplemental pleading or may be asserted in a separate action. As Toney attempted to assert the foreclosure as a counterclaim, it must be considered a supplemental pleading to which rule 15(d) applies and not an amendment to which rule 15(a) would apply.

Rule 15(d) requires leave of court to file a supplemental

pleading. Apparently no motion was made by Toney. In some circumstances we would have to say that, given the failure to make a motion to be permitted to file the supplemental pleading, the court should have stricken it, but not here. The parties and the court were apparently oblivious to the distinction between an amendment and a supplemental pleading, and no issue arose over the failure of Toney to seek the court's permission to file the pleading. Given these circumstances, we have no hesitancy in saying that had the court denied a motion to allow the pleading we would have considered that an abuse of his discretion. This is especially true in view of Haskins' claim, and the apparent agreement of the court, that Toney was barred from asserting foreclosure by the election of remedies doctrine. As mentioned above, an inevitable extension of argument is that Toney could not have sought foreclosure as a separate action in chancery.

The trial court's statement that the counterclaim was not "timely" made no reference to any requirement in the rules stating it must be "timely," and we know of none except to the extent timeliness may play a part in the application of rule 13(d). The essence of rule 13(d) is that such a supplemental pleading should be permitted "upon such terms as are just." Here it would most certainly have been "unjust" to have refused the pleading.

### 3. *Election of remedies.*

Haskins' contention here is, and the court's decision below was, that because Toney had elected to affirm and sue for damages at law on the note, he elected his remedy to the exclusion of his foreclosure alternative.

Our main difficulty with this argument is in finding the juncture at which such election was made. Other than the delay in asserting the foreclosure, with which we have dealt above, the only fact cited by Haskins showing an election is Toney's request in his original answer for attorney's fees.

In Toney's original answer he defended the note and sought attorney's fees, but that was solely in response to Haskins' request for damages represented by the face value of

the note as part of the "secret profits" allegedly obtained by Toney.

At no point in that pleading did Toney allege default on the note and seek acceleration and judgment for the full amount or any note payment. The telling reason is that he could not have done so, given that the note was not in default. As stated above, we know of no reason to say Toney was required to regard Haskins' suit as an anticipatory breach or default on the note. Had Toney prevailed, he might well have chosen to leave the note intact, continuing to demand the annual payments.

The election of remedies rule is not favored by the courts. *Owens* v. *Bill and Tony's Liquor Store*, 258 Ark. 887, 529 S.W. 2d 354 (1974). For it to be applied there must be concurrent, inconsistent remedies. *Belding* v. *Whittington*, 154 Ark. 561, 243 S.W. 808 (1922). Haskins' only serious allegation on this point is that Toney made the fatal election when he answered Haskins' original complaint. At that time there was really no remedy available to Toney as there had been no default, let alone concurrent remedies.

### 4. *Failure to seek permission to sue third parties.*

As one of its reasons for dismissing Toney's third party complaint against the appellees, other than Haskins, who might have had an interest in the property subject to the foreclosure sought, the court cited that Toney had not complied with the requirement of A. R. Civ. P. 14(a) that a motion and notice be filed to bring in a third party if the defendant seeks to do more than ten days after filing an answer.

We need only point out that rule 14 deals with impleader by a defendant to a claim or counterclaim of a person or persons who "may be liable . . . for all or part of the plaintiff's [or counter claimant's] claim against him." That was not the purpose of bringing in these third party defendants to Toney's counterclaim. Rather, his complaints against them fit precisely the joinder provision of rule 19(a), and if the foreclosure claim had been permitted to stand, as it should

have, the court would have been required to join these other appellees as defendants, given the "feasibility" of joining them.

## 5. *Transfer to chancery.*

Although the action for "secret profits" could be characterized as a simple restitutionary action and thus one cognizable at law, as opposed to an equitable "accounting," we agree that, as no argument has been made that the action to foreclose is one the circuit court should hear, and as it is clear the claims of the plaintiff and defendant are related and largely dependent on each other, the entire matter should be transferred to chancery pursuant to rule 18(b).

Reversed and remanded.

Supplemental Opinion delivered December 10, 1980

DAVID NEWBERN, Judge. The facts stated in paragraph two of the opinion were ascertained from exhibits filed with the pleadings. The statements are not in any way intended to be binding upon the trial court in any future proceedings.